UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


| | | | |
|---|---|---|---|
| MAURICE BILLIE, | : | | |
| Petitioner, | : | | |
| | : | | PRISONER |
| v. | : | Case No. | 3:01cv745(DJS) |
| | : | | |
| WARDEN, | : | | |
| Respondent. | : | | |

RULING AND ORDER

The petitioner, Maurice Billie, currently is confined at the MacDougall-Walker Correctional Center in Suffield, Connecticut. He brings this action pro se for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction on seven grounds. For the reasons set forth below, the petition is denied.

I.  Factual Background

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts. On September 3, 1994, Billie spent the evening drinking alcohol and smoking marijuana and illy, a nonuniform mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde. The following day, Billie went to a cookout hosted by friends where he and two friends smoked "blunts," small cigars that are hollowed out and filled with illy. State v. Billie, 47 Conn. App. 678, 680, 707 A.2d 324, 327 (1998), aff'd on other grounds, 250 Conn. 172, 738 A.2d 586 (1999).

Later that day, Billie met his friend Andre Cinicola, who had a .40 caliber semiautomatic pistol in a shoulder holster. Billie put on the holster and weapon and covered them with a leather jacket. Billie agreed to buy marijuana for Cinicola and two female friends. He borrowed a black Mazda Miata from another friend, and drove with Cinicola to Congress Avenue in New Haven to purchase marijuana from curbside dealers. During this time, acquaintances of Billie drove up in a gray Chrysler and told Billie and Cinicola that members of a gang known as the Stickup Boys were nearby and that they were driving in a blue Mustang. The occupants of the Chrysler stated that they intended to 'get' the Stickup Boys and drove off to find them. Billie and Cinicola followed. Id., 707 A.2d at 327.

A few minutes later, the drivers of the Chrysler and the Miata came upon a blue Mustang with tinted windows, which they believed to be occupied by the Stickup Boys. The Chrysler and the Miata pulled behind the Mustang. When the occupants of the Chrysler fired several shots at the Mustang, the Mustang fled at a high speed up Sherman Avenue, with the Chrysler and Miata in pursuit. The Chrysler and Miata ran red lights and stop signs, traveled at speeds exceeding fifty miles per hour and swerved in and out of oncoming traffic as they tried to overtake the Mustang. Id. at 680-81, 707 A.2d at 327.

As Billie positioned the Miata alongside the driver's side window of the Mustang, Cinicola took the pistol from Billie and fired two shots at the Mustang. The pistol jammed. Cinicola tried to clear the weapon while the pursuit continued. Cinicola fired two more shots at the Mustang. One of the bullets struck the driver in the head, either killing or incapacitating him instantly. The driver lost control of the car and the Mustang crashed into a nearby office building. Billie also lost control of the Miata. The car jumped the curb and skidded sideways along the sidewalk until it collided with a utility pole about seventy feet from the Mustang. Three New Haven police officers saw the last portion of the chase and shootout. Id. at 681, 707 A.2d at 327-28.

The police officers found Cinicola on the sidewalk next to the Miata. Billie was trapped in the driver's seat. Rescue personnel had to cut Billie out of the car before they could transport him to a hospital. The two passengers in the backseat of the Mustang had minor injuries and the two passengers in the front seat each suffered fatal gunshot wounds. The driver was killed by a single gunshot wound to the head. The front seat passenger was killed by a single gunshot wound to the chest. Ballistics tests confirmed that the bullet that killed the passenger was fired from Cinicola's gun. The bullet that killed the driver passed through his skull and was never recovered. Id.

at 681, 707 A.2d at 328.

The murder weapon was recovered near the Miata. Tests revealed Cinicola's left index fingerprint on the gun. Several shell casings were recovered and several live, unfired rounds were found in the passenger compartment of the Miata. No weapon was found in the Mustang. Evidence later revealed that Billie knew all four occupants of the Mustang and was a close friend of the two who were killed. The tinted windows of the Mustang had prevented Billie and Cinicola from identifying the occupants of the Mustang, none of whom was connected to the Stickup Boys. Id. at 682, 707 A.2d at 328.

## II. Procedural Background

After a jury trial in the Connecticut Superior Court for the judicial district of New Haven, Billie was found guilty on two counts of being an accessory to manslaughter in the first degree and one count of carrying a pistol without a permit. He was sentenced to a total effective term of imprisonment of forty-five years.

Billie appealed his conviction to the Connecticut Appellate Court. He challenged his conviction on four grounds: (1) the trial court improperly excluded the testimony of Billie's expert, (2) the trial court improperly instructed the jury that it must draw an inference if the inference was reasonable, (3) the trial court improperly denied Billie's motion to suppress and (4) Conn.

4

Gen. Stat. § 53-202k is unconstitutional. Id. at 679-80, 707
A.2d at 327. The Connecticut Appellate Court ordered Billie's
conviction under section 53-202k vacated, but otherwise affirmed
his conviction. Id. at 687-88, 690, 692-93, 707 A.2d at 330,
331, 333. The Connecticut Supreme Court granted certification to
appeal only the issue regarding the exclusion of the expert's
testimony. On August 10, 1999, the court concluded that the
trial court had not abused its discretion by excluding the
testimony of Billie's expert and upheld Billie's conviction.
State v. Billie, 250 Conn. 172, 182, 738 A.2d 586, 591 (1999).

On April 17, 1998, Billie filed a petition for writ of
habeas corpus in state court. In his amended petition he claimed
that trial counsel was ineffective for six reasons. The state
court conducted a hearing at which Billie and trial counsel
testified. On June 4, 2001, the state court restored Billie's
right to sentence review and determined that trial counsel was
not otherwise ineffective. (Dkt. # 36, App. V, Tr. June 4, 2001,
at 10-17) Billie did not appeal the denial.

Billie filed a second state habeas corpus action in
September 2003, asserting claims of ineffective assistance of
trial and appellate counsel, actual innocence based on newly
discovered evidence, and denial of a fair trial. (Dkt. # 36,
App. I) The state court denied the petition by decision dated
April 13, 2007. (Dkt. # 36, App. N) The denial was affirmed on

5

appeal.  <u>Billie v. Commissioner of Correction</u>, 111 Conn. App. 905, 959 A.2d 1092 (2008), <u>cert. denied</u>, 290 Conn. 919, 966 A.2d 235 (2009).  In May 2007, Billie filed a third state habeas corpus action which remains pending.[1]

III.  <u>Standard of Review</u>

 The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  <u>See</u> 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

 The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme

---

[1] <u>Billie v. Warden</u>, No. TSR-CV07-4001731-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV074001731S (last visited July 28, 2010).

Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court

findings where state court has adjudicated constitutional claims
on the merits). Because collateral review of a conviction
applies a different standard than the direct appeal, an error
that may have supported reversal on direct appeal will not
necessarily be sufficient to grant a habeas petition. Brecht v.
Abrahamson, 507 U.S. 619, 634 (1993).

IV. Discussion

In his amended petition, Billie challenges his conviction on
seven grounds: (1) the trial court improperly excluded the
testimony of Billie's expert witness; (2) ineffective assistance
of trial counsel based on: (a) failure to secure an independent
psychological evaluation of Billie, (b) failure to present expert
testimony on Billie's mental condition at the time of trial, and
(c) failure to adequately prepare Billie's expert witness; (3)
violation of his right to be free from double jeopardy; (4)
actual innocence based on newly discovered evidence, i.e., the
testimony of Billie's co-defendant; (5) the trial court
improperly denied his motion to suppress his confession; (6) the
trial court improperly instructed the jury that it should draw an
inference if the inference is reasonable; and (7) Conn. Gen.
Stat. § 53-202k is unconstitutional.

A. Timeliness of Newly Added Claims

Federal habeas corpus statutes impose a one year
statute of limitations on federal petitions for writ of habeas

8

corpus challenging a judgment of conviction imposed by a state court. See 28 U.S.C. § 2244(d)(1). In general, the limitations period runs from the completion of a direct appeal or the conclusion of the time within which an appeal could have been filed. 28 U.S.C. § 2244(d)(1)(A). With respect to a newly discovered evidence claim, the period runs from the date when the evidence could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). The limitations period may be tolled for the period during which a properly filed state habeas petition is pending. 28 U.S.C. § 2244(d)(2).

The Connecticut Supreme Court issued its decision upholding Billie's conviction on August 10, 1999. At that time, Billie's first state court habeas petition, which had been filed on April 17, 1998, was pending. The state court denied Billie's first habeas petition on June 4, 2001. Billie did not appeal the denial.[2] The general limitations period, therefore, began to run

---

[2]For purposes of his amended federal habeas petition, Billie "stipulates to the procedural history of the case as outlined in Section I (1-4) of the respondent's Memorandum of Law in Opposition to Application for Writ of Habeas Corpus dated January 4, 2010." (Dkt # 43, p. 7) Respondent's opposition memorandum specifies that "[t]he petitioner did not appeal" from the first state habeas petition. (Dkt. # 36, p. 3) While it appears that Billie did make some effort, albeit an unsuccessful effort, to appeal from the first state habeas decision, that circumstance is, as noted in the respondent's memorandum, inconsequential in light of a May 23, 2002 Notice of Dismissal issued by the Connecticut Appellate Court. (Dkt. # 36, p. 3) Billie's second state habeas petition was not filed until sixteen months later in September 2003.

on June 24, 2001, at the expiration of the twenty-day period during which Billie could have filed an appeal. See Connecticut Practice Book § 63-1 (setting time limit for filing direct appeal); see also Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (holding that conviction becomes final when time to seek direct review of conviction expires).

Billie filed this action on April 30, 2001, before the denial of his state habeas petition. The filing of a federal habeas petition, however, does not toll the limitations period. See Duncan v. Walker, 533 U.S. 167, 181 (2001). Thus, the fact that Billie had filed a federal habeas action does not toll the limitations period for any newly added claims.

Billie states that he sought review of his sentence on June 1, 2001,[3] and argues that the pendency of that action tolls the limitations period through June 7, 2004, the date of decision. The Court disagrees.

Section 2244(d)(2) provides tolling for "post-conviction or other collateral review with respect to the pertinent judgment or claim. . . ." In Connecticut, sentence review is intended "to reduce the disparity in sentences meted out by different judges. . . ." James L. v. Commissioner of Correction, 245 Conn. 132, 144, 712 A.2d 947, 953 (1998). The judgment of conviction is not

---

[3]The record reflects that Billie's right to sentence review was restored and he was provided sentence review forms on June 4, 2001. (Dkt. # 36, App. V, Tr. June 4, 2001, at 10, 18)

reviewed, only the punishment imposed is considered.  See State v. Olson, 115 Conn. App. 806, 815 n.5, 973 A.2d 1284, 1289 n.5 (2009) (sentence review does not provide an avenue to correct an illegally imposed sentence).  Other courts have held that such a review does not toll the limitations period.  See Bridges v. Johnson, 284 F.3d 1201, 1203-04 (11th Cir. 2002) (application for sentence review pursuant to Georgia law does not toll the limitations period for filing a federal habeas petition); Hartman v. Carroll, 492 F.3d 478, 483-84 (3d Cir. 2007) (petition for leniency seeking discretionary relief does not toll limitations period because state is not being asked to correct errors in judgment of conviction).  At most, a favorable decision from the Sentence Review Division would have adjusted Billie's term of imprisonment.  The panel would not have reviewed the constitutionality of his conviction or any of the challenges to that conviction asserted on direct appeal or in a state or federal habeas petition.  Thus, this Court concludes that the filing of an application for sentence review did not toll the limitations period.

Billie includes three claims in his amended petition that were not contained in his original petition:  ineffective assistance of trial counsel for the three reasons asserted in the

amended petition[4], double jeopardy, and actual innocence based on newly discovered evidence.  An amendment to a habeas petition "'does not relate back (and therefore escape the AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" <u>Nieves-Andino v. Conway</u>, No. 08 CV 5887 (NRB), 2010 U.S. Dist. LEXIS 40418, at *21 (S.D.N.Y. April 20, 2010)(quoting <u>Mayle v. Felix</u>, 545 U.S. 644, 650 (2005).  Since all three of the new claims in the amended petition "assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," <u>Id.</u>, none of those three claims relate back to the original petition filed in 2001.

The limitations period ended on June 24, 2002.  Although Billie filed two other state habeas petitions, in September 2003 and May 2007, these petitions could not toll the limitations period because the period had expired before the second and third state petitions were filed.  <u>See</u> <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000) (filing a second state habeas petition does not reset the limitations period).  Thus, Billie's first two newly added claims are time-barred.

_____

[4]The original petition had included a different claim of ineffective assistance of trial counsel involving review of the presentence investigation report.  Billie "purposely did not include [this] unexhausted claim from the original 2001" petition in his amended petition. (Dkt. # 43, p. 14)

The limitations period for the third claim commences when Billie, through the exercise of reasonable diligence, could have discovered the new evidence. Billie states that the new evidence demonstrating his actual innocence is the testimony of Billie's associate, Andre Cinicola, who had exercised his Fifth Amendment right against self-incrimination when called to testify at Billie's criminal trial. Shortly thereafter, Cinicola pleaded guilty. Billie could have ascertained Cinicola's version of the events at any time after he was convicted. The fact that Cinicola did not testify until 2006, at the hearing on Billie's second state habeas petition, does not mean that, by exercising due diligence, Billie could not have discovered the information sooner. The information would have been available to Billie from July 25, 1998, the day following Cinicola's sentencing. See www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=196463 (last visited July 28, 2010) (indicating that, on July 24, 1998, Cinicola was sentenced to a term of imprisonment of fifty years). Thus, the same limitations period would apply and this claim also is time-barred.

Equitable tolling may be applied in habeas cases only in extraordinary and rare circumstances and requires a petitioner to show that he has been pursuing his rights diligently, but extraordinary circumstances prevented him from timely filing his petition. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Diaz v.

Kelly, 515 F.3d 149, 153 (2d Cir. 2008). The threshold for a petitioner to establish equitable tolling is very high. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (acknowledging high threshold for establishing equitable tolling).

The standard for determining whether a petitioner diligently pursued his rights is reasonable diligence. The court must determine whether "the petitioner act[ed] as diligently as reasonably could have been expected *under the circumstances*." Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original). The petitioner must have acted with reasonable diligence throughout the entire period he seeks to toll, that is, during the period after the extraordinary circumstances began. See id. at 150 (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001).

When considering the extraordinary circumstances, the court considers "how severe an obstacle it is for the prisoner endeavoring to comply with the AEDPA's limitations period." Diaz, 515 F.3d at 154. The inquiries into extraordinary circumstances and reasonable diligence are related. The petitioner must show "'a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing.'" Saunders v. Edwards, 171 Fed. Appx. 872 (2d Cir. 2006)(quoting Hizbullahankhamon, 255 F.3d at 75). Billie cannot establish the required causal relationship if, "acting with

reasonable diligence, [he] could have filed on time notwithstanding the extraordinary circumstances." <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000). Billie provides no explanation for failing to raise and properly exhaust these claims in a timely manner. Thus, he has not identified any extraordinary circumstances that would warrant equitable tolling and has not shown that he acted with reasonable diligence. The court concludes that equitable tolling is not warranted and the newly added claims are dismissed as untimely filed.

B. <u>Merits of the Remaining Claims</u>

Billie includes in his amended federal petition four claims from his original federal habeas petition filed on April 30, 2001. The respondent argues that these claims also are time-barred. In addition, the respondent contends that, even if the court were to consider the claims on the merits, the claims should be denied.

The original petition was a mixed petition; it contained one claim for which Billie had not exhausted his state remedies. In light of the limitations period for filing a federal habeas action, the Second Circuit has directed the district court not to dismiss a mixed petition if an outright dismissal would preclude petitioner from having all of his claims addressed by the federal court. <u>See</u> <u>Zarvela v. Artuz</u>, 254 F.3d 374, 380-83 (2d Cir. 2001) (recommending that the district court stay exhausted claims and dismiss unexhausted claims with direction to timely complete the

exhaustion process and return to federal court).

Thus, on November 11, 2001, the court stayed this action to enable Billie to complete the exhaustion process regarding one of the five claims in the original petition. (Dkt. # 11) Billie filed a notice indicating that he filed an appeal in state court. (Dkt. # 12) On April 17, 2002, upon discovering that no appeal had been filed, the court vacated the order and dismissed the petition for failure to exhaust state remedies. (Dkt. # 15)

In May 2009, Billie moved to reopen this case. (Dkt. # 18) He stated that he had attempted to file the state appeal as directed but the process was delayed by papers being submitted to the wrong department. (Id.) The respondent did not oppose the motion to reopen. Thus, in August 2009, the court reopened the case and ordered the respondent to show cause why the petition should not be granted. (Dkt. # 22) In light of the confusion regarding Billie's compliance with the Court's direction that he promptly exhaust his state remedies and the Second Circuit's preference that the district court enable a petitioner to obtain federal review of his claims, the Court will consider the merits of the four claims included in the amended petition that also were asserted in the original federal petition. The Court considers the last reasoned state court decision for each claim. See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991). For the first claim, the Court reviews the decision of the Connecticut Supreme Court. For

16

the other three claims, the Court reviews the decision of the Connecticut Appellate Court.

### 1. Preclusion of Expert Testimony

Billie first argues that the trial court improperly excluded the testimony of his expert witness, thereby preventing him from presenting a defense of intoxication.

Criminal defendants have a fundamental right to present witnesses in their defense. Chambers v. Mississippi, 410 U.S. 284, 294 (1973). This right includes the right to present expert witnesses. See Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001). The court need not, however, admit all expert testimony. "[E]xpert testimony is limited by the requirements of relevancy and by the trial court's traditional discretion to prevent prejudicial or confusing testimony." Id. (internal quotation marks omitted). The trial court has broad discretion to admit or exclude expert testimony. The court's decision, should be "'sustained unless manifestly erroneous.'" United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)).

To prevail on this claim, Billie must demonstrate that the excluded expert testimony, when considered in the context of the entire record, "creates a reasonable doubt that did not otherwise exist. . . ." United States v. Agurs, 427 U.S. 97, 112 (1976). Even if the Court were to find that the expert testimony was

erroneously excluded, habeas relief would be denied if the
information sought to be presented through the expert was
presented to the jury by other means.  See Washington, 255 F.3d at
59-61 (holding that admission of proposed expert testimony  would
not have created "otherwise non-existent" reasonable doubt about
petitioner's guilt because information was presented to the jury
in many other ways); see also Agard v. Portuondo, 117 F.3d 696,
706-07 (2d Cir. 1997) (holding that erroneous evidentiary ruling
was harmless because ruling did not deprive criminal defendant of
opportunity to make argument to the jury), rev'd on other grounds,
529 U.S. 61 (2000).

The Connecticut Supreme Court reviewed the trial court's
decision for abuse of discretion and a showing by Billie of
substantial prejudice caused by the exclusion of relevant
evidence.  Billie, 250 Conn. at 180-81, 738 A.2d at 590-91.  This
standard comports with Supreme Court law.  Accordingly, the state
court decision is not contrary to federal law.

Billie's expert could testify to the general composition of
the drug illy and the general effects of the individual substances
comprising illy.  He had not examined Billie, any of Billie's
medical records or the substance Billie claimed to have ingested.[5]

_____

[5]At trial, the state also objected to the introduction of
the expert's testimony because the expert stated that he had not
ever personally examined anyone who ingested illy and there was
no evidence regarding what quantity of illy was ingested by
Billie on the day of the incident.  (Dkt. # 36, App. V, Tr.

The Connecticut Supreme Court stated that the expert could not testify as to the composition of the particular drug ingested by Billie, the general effects of illy or the effects of the particular drug ingested on Billie's conduct at the time of the incident. The court concluded, therefore, that the expert testimony would not be helpful to the jury and that the trial court correctly excluded the testimony. In addition, the Connecticut Supreme Court explained that Billie was not precluded from presenting a defense of intoxication through his own testimony and the testimony of other witnesses. Id. at 181-82, 738 A.2d at 591.

This Court concludes that the Connecticut Supreme Court's analysis of this claim was not an unreasonable application of clearly established federal law. Accordingly, the petition is denied as to this claim.

        2. <u>Jury Instruction</u>

Billie argues that the trial court improperly instructed the jury that it should draw an inference if the inference is reasonable. He contends that this instruction diluted the state's burden of proof and constituted a mandatory presumption in violation of Supreme Court law. Billie did not preserve this claim for appellate review. Thus, he was required to demonstrate a constitutional violation to obtain appellate review. <u>See</u> <u>State</u>

5/18/95 at 48-50)

v. Golding, 213 Conn. 233, 239-40, 567 A.2d 823, 827 (1989)
(permitting appellate review of unpreserved claim of
constitutional error if the record is adequate for review, the
claim is of constitutional magnitude claiming the violation of a
fundamental right, the alleged violation clearly exists and
deprived the criminal defendant of a fair trial and, if subject to
harmless error analysis, the state failed to demonstrate
harmlessness beyond a reasonable doubt).  The Connecticut
Appellate Court concluded that a constitutional violation did not
clearly exist and that Billie was not deprived of a fair trial.

In analyzing this claim, the Court must determine whether the
instruction created a mandatory presumption or merely a permissive
inference.  "A mandatory presumption instructs the jury that it
must infer the presumed fact if the State proves certain predicate
facts.  A permissive inference suggests to the jury a possible
conclusion to be drawn if the State proves predicate facts, but
does not require the jury to draw that conclusion."  Francis v.
Franklin, 471 U.S. 307, 314 (1985) (footnote omitted).

To warrant habeas corpus relief, Billie must establish that
the instruction "by itself so infected the entire trial that the
resulting conviction violates due process."  Estelle, 502 U.S. at
72 (internal quotation marks omitted); see also Cupp v. Naughten,
414 U.S. 141, 146 (1973) (petitioner must show "not merely that
the instruction is undesirable, erroneous, or even 'universally

20

condemned,' but that it violated some right which was guaranteed by the Fourteenth Amendment"). That the instruction violated state law, without more, does not warrant federal habeas relief. See Estelle, 502 U.S. at 71-72. When analyzing a claim of an improper jury instruction, the court must consider the instruction in the context of the charge as a whole and the entire trial record. See Francis, 471 U.S. at 315.

In evaluating a jury instruction, the Court considers "the way in which a reasonable juror could have interpreted the instruction." Sandstrom v. Montana, 442 U.S. 510, 514 (1979). Thus, if the jury instruction mandates a presumption, it would shift the burden of proof. But if the instruction only suggested that the jury might draw a certain inference, it would not. See id. at 515, 517.

In determining whether Billie demonstrated a constitutional violation, the Connecticut Appellate Court noted that it must view the charge as a whole and ensure that the charge "adequately guided the jury to a fair and just verdict." Billie, 47 Conn. App. at 689, 707 A.2d at 331. Although the court cited Connecticut cases, the standard applied was in accordance with federal law. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

During the charge, the trial court instructed the jury as

21

follows:

> "It is your duty to determine the facts and in so doing you should carefully consider and weigh the arguments [of] counsel as to the facts. In deciding the facts you must consider all the evidence and *it is your duty to draw such reasonable and logical inferences from such facts as you find proven.*"

Id. at 688, 707 A.2d at 331 (emphasis in original). The court also stated:

> "The only way in which a jury can determine what a person's intention was at any given time, aside from the man's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and any statements made by that person and from those infer what his intention was. *To draw such an inference is not only the privilege but also the duty of the jury, provided, of course, the inference drawn is a reasonable inference.*"

Id., 707 A.2d at 331 (emphasis in original).

The Connecticut Appellate Court reviewed this language in context of the charge as a whole and determined that the language was consistent with other jury charges that had been determined not to have misled the jury. Id. at 689-90, 707 A.2d at 331.

Elsewhere in the charge, the trial court instructed the jury that the state must prove all elements of the charged crimes beyond a reasonable doubt. The jury was told to consider the totality of the evidence, both direct and circumstantial. The trial court emphasized that Billie was innocent until proven guilty and that he must be acquitted if the jury could reconcile the facts with any theory reasonably consistent with innocence. (Dkt. # 36, App. V, Tr. 5/22/95 at 76-78)

Upon careful review, this Court concludes that the jury charge did not contain a mandatory presumption and the charge as a whole did not render Billie's trial fundamentally unfair. The Connecticut Appellate Court's determination that Billie failed to demonstrate that the jury charge violated a fundamental constitutional right was a reasonable application of Supreme Court law. Accordingly, the petition is denied as to this claim.

### 3. Failure to Suppress Confession

Billie argues that the trial court should have suppressed his post-arrest confession. He contends that he did not voluntarily, intelligently or knowingly waive his <u>Miranda</u>[6] rights. Instead, he was induced to confess by promises of leniency from the police.

In analyzing the voluntariness of a confession, the court considers the totality of the circumstances surrounding the confession. <u>See</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 282-89 (1991). These circumstances include the suspect's background and experience, the conditions of the interrogation and the conduct of the law enforcement officers. <u>See</u> <u>United States v. Ruggles</u>, 70 F.3d 262, 264-65 (2d Cir. 1995). The voluntariness of the confession is a question of law reviewed <u>de</u> <u>novo</u> by the federal court. <u>See</u> <u>Miller v. Fenton</u>, 474 U.S. 104, 110-12 (1985). The state court's factual findings of the circumstances  surrounding the confession, such as the length of the interrogation, the

---

[6]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

conditions under which it was conducted, whether the police intimidated the suspect and the suspect's familiarity with the judicial process and the _Miranda_ warnings are, like other facts, presumed to be correct if adequately supported in the record. _See id._ at 117.

The Connecticut Appellate Court applied _Miranda_ and evaluated the totality of the circumstances surrounding Billie's confession. Thus, the state court decision is not contrary to Supreme Court law.

Billie was afforded a two-day hearing on his motion to suppress. The trial court heard testimony from Billie and four detectives. The trial court found the following facts relating to the confession. Billie was twenty-four years old. He had average intelligence and a tenth grade education. He was familiar with the legal system through eleven prior arrests, two felony convictions and three pending criminal cases. Hospital personnel permitted the police to interview Billie in the hospital, suggesting that Billie's doctors had no concerns regarding his medical condition. Billie was not under the influence of drugs or other medications at the time of his confession. At the hearing, Billie admitted the portion of the statement indicating that he drove the Miata while Cinicola fired shots into the Mustang. This admission formed the basis for the charge of accessory to manslaughter. (Dkt. # 36, App. V, Tr. 5/10/95(I) at 79-128; Tr.

5/10/95(II) at 1-38; Tr. 5/15/95 at 2-56)

The Connecticut Appellate Court accepted the underlying factual findings and credibility determinations of the trial court, but independently evaluated the voluntariness of Billie's confession by considering the totality of the circumstances <u>de novo</u>, as required by federal law.  The Appellate Court concluded that the trial court's determination that the confession was not obtained by threats, promises or coercion by the police was not clearly erroneous.  This Court's review of the record fails to support Billie's contention that he was suffering from the effects of illy, was painfully immobilized by serious injuries and could not stay awake during questioning.  Other courts have found individuals questioned in the hospital with no evidence of severe pain or medication to have validly waived their rights.  <u>See, e.g.</u>, <u>Campaneria v. Reid</u>, 891 F.2d 1014, 1020 (2d Cir. 1989) (criminal defendant could validly waive rights while in hospital recovering from knife wound); <u>Brown v. Phillips</u>, No. CV-03-0361(DGT), 2006 WL 656973, at *5-6 (E.D.N.Y. Mar. 13, 2006) (seventeen-year-old criminal defendant questioned one-half hour after being brought out of recovery room could validly waive rights where injuries from three gunshot wounds and resulting surgery were not serious and there was no evidence he was in such pain that police questioning overcame his will or that he received medication that compromised his understanding).  This Court

concludes that the Connecticut Appellate Court's determination that Billie's confession was voluntarily, intelligently and knowingly made is a reasonable application of Supreme Court law. The petition is denied as to this claim.

### 4. Constitutionality of Section 53-202k

In his fourth claim, Billie challenges the constitutionality of Conn. Gen. Stat. § 53-202k as a violation of separation of powers and as cruel and unusual punishment. The Connecticut Appellate Court ordered that Billie's conviction under section 53-202k be vacated. State v. Billie, 47 Conn. App. at 693, 707 A.2d at 333.

Billie argues that, although the conviction was vacated, he still was sentenced to a consecutive five-year term of imprisonment. He asks this court to vacate that sentence.

Billie was found guilty on counts 2, 3, 5 and 6 of the seven count long-form information. He was sentenced to a twenty-year term of imprisonment on count 2; a twenty-year term of imprisonment on count 3, consecutive to the term on count 2; a five-year term of imprisonment on count 5, consecutive to terms on counts 2 and 3; and a five-year term of imprisonment on count 6, concurrent to the terms on counts 2, 3, and 5. (Dkt. # 36, App. B at 13a) The fifth count was the violation of section 53-202k. (Id. at 6)

The Connecticut Appellate Court agreed with Billie's argument

that section 53-202k was not a separate crime and vacated his conviction.  The court stated, however, that section 53-202k was a valid sentence enhancement provision and determined that Billie's total effective sentence of forty-five years was proper.  In presenting this claim, Billie relied on state law to support his separation of powers argument.  (Dkt. # 36, App. A at 29-39)  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle, 502 U.S. at 68.  In addition, the federal doctrine of separation of powers is not mandatory for the states.  See Whalen v. United States, 445 U.S. 684, 689 n.4 (1980).  Thus, Billie fails to show that his sentence violates federal law.

In addition, Billie challenged the sentence as constituting cruel and unusual punishment in violation of the Eighth Amendment. Although Billie provided no federal analysis, the Court will address the claim.  Such a challenge can succeed only if the sentence is "grossly disproportionate" to the crime.  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991).  The Sentence Review Division determined that the sentence imposed was appropriate "in light of the nature of the offense, the character of the offender, the protection of the public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended."  State v. Billie, No. CR94402410, 2004 WL 1393778, at *3 (Conn. Super. Ct. June 7, 2004).  A sentence within

the range prescribed by state law does not warrant federal habeas relief.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Thus, this challenge fails as well.

V.    Conclusion

The amended petition for a writ of habeas corpus **(Dkt. # 23)** is **DENIED.**  The Clerk is directed to enter judgment and close this case.  The court concludes that Billie has not demonstrated the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue.

**SO ORDERED** this __29th__ day of July, 2010, at Hartford, Connecticut.

___/s/ DJS_____
Dominic J. Squatrito
United States District Judge